IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CRICKET COMMUNICATIONS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> BRYAN L. PACE, <br><br> Defendant. | ORDER AND <br><br> MEMORANDUM DECISION <br><br> Case No. 2:11-cv-888 |

# BACKGROUND[1]

Plaintiff Cricket Communications, Inc. (Cricket) filed suit against Defendant Bryan L. Pace in order to enforce the terms of a personal guaranty. Mr. Pace signed the personal guaranty on July 1, 2008, in connection with a separate agreement (the "Premier Dealer Agreement") between Cricket and the company All You Can Talk, Inc. (AYCT). The Premier Dealer Agreement authorized AYCT to operate retail stores that sold Cricket's wireless phones and services and was signed at the same time as the personal guaranty. Mr. Pace is a shareholder and director of AYCT, as well as its Chief Financial Officer.

In early 2009, the relationship between AYCT and Cricket deteriorated and Cricket terminated the Premier Dealer Agreement pursuant to the at-will termination clause. AYCT then sued Cricket in Utah state court, and Cricket filed an AAA arbitration demand. Ultimately, both parties agreed to submit all claims to arbitration in Salt Lake County, Utah. After extensive

---

[1] The facts in this section are taken from the memorandum supporting Plaintiff's Motion for Summary Judgment (Dkt. No. 13) and the memorandum supporting Defendant's Motion to Dismiss (Dkt. No. 6).

discovery, the Arbitrator (C. Scott Green, Esq.) found for Cricket and against AYCT on all claims and counterclaims, awarding Cricket $1,338,099.93.  On September 12, 2011, Magistrate Judge Warner issued a Report and Recommendation stating that Cricket's arbitration judgment should be confirmed, and on October 3, 2011, District Judge Benson adopted Judge Warner's findings.  The Clerk of the Court entered judgment in Cricket's favor in the amount of $1,338,099.93 on October 3, 2011.

Cricket has not yet received any money from this judgment and claims that Mr. Pace is liable for the full amount of the arbitration award.  Cricket alleges that under the terms of the personal guaranty, Mr. Pace guaranteed to Cricket "(i) strict compliance by [AYCT] with all the terms, covenants and conditions of the Agreement, and (ii) payment to Cricket of all amounts payable pursuant to the Agreement."  Cricket has filed a motion for summary judgment (Dkt. No. 13) because it claims that there are no genuine issues of material fact that are in dispute in this matter.

Mr. Pace has filed a motion to dismiss for improper venue (Dkt. No. 5) and an amended motion to dismiss in which he claims that the court cannot exercise personal jurisdiction over him (Dkt. No. 34).  In addition to a motion to stay briefing, which the court already denied, he has also filed a motion to continue discovery (Dkt. No. 36) and a motion to strike Plaintiffs' reply memorandum in support of its motion for summary judgment (Dkt. No. 50).

**ANALYSIS**

The court will first take up the jurisdictional questions raised by Mr. Pace's motion to dismiss, before turning to his motion to continue discovery and motion to strike.  Finally, the court will address the arguments raised in the summary judgment briefs.

**Motion to Dismiss and Amended Motion to Dismiss (Dkt. Nos. 5, 34)**

Mr. Pace bases these two motions on his contention that the court does not have personal jurisdiction over him or that venue is not proper in this jurisdiction.

Personal Jurisdiction

To establish personal jurisdiction over Mr. Pace, Cricket must show, first, that jurisdiction is authorized under Utah law and, second, that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment.  Far West Capital, Inc. v. Towne, 46 F.3d 1071, 1074 (10th Cir. 1995).  But the Utah Supreme Court has explicitly said that "any set of circumstances that satisfies due process will also satisfy the long-arm statute."  SII MegaDiamond, Inc. v. Am. Superabrasives Corp., 969 P.2d 430, 433 (Utah 1998).  This holding collapses the Utah standard into the more general "due process" standard for jurisdiction.  See Rusakiewicz v. Lowe, 556 F.3d 1095, 1100 (10th Cir. 2009).

The first step in this analysis is to determine whether Mr. Pace had "minimum contacts" with the forum state.  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  In Employers Mutual Casualty Co. v. Bartile Roofs, Inc., the Tenth Circuit held that the minimum contacts test is satisfied "by showing that (1) the defendant has purposefully availed [himself] of the privilege of conducting activities or consummating a transaction in the forum state and (2) the litigation results from alleged injuries that arise out of or relate to those activities."  618 F.3d 1153, 1160 (10th Cir. 2010).  Mr. Pace argues that he does not have the "minimum contacts" necessary for a Utah court to exercise jurisdiction over him because he did not transact any personal business in Utah; rather, he merely acted as a corporate official.  But Mr. Pace acted in his personal capacity when he signed the personal guaranty that is the subject of this lawsuit.  In National Can Corp. v.

3

K Beverage Co., the Sixth Circuit held that, no matter where the signing occurs, the signing of a personal guaranty alone establishes personal jurisdiction in the judicial district where the company whose officer signed the guaranty has its principal place of business.  674 F.2d 1134, 1137 (6th Cir. 1982).  While not controlling authority, the court finds the Sixth Circuit's reasoning persuasive given the facts of this case.  Similar to the defendants in National Can, Mr. Pace risked his name and financial worth to aid in the establishment of a Utah venture in which, as a 50% shareholder, a director, and the CFO of AYCT, he had a property interest.  The personal guaranty is the type of purposeful availment that creates the minimum contacts necessary to exercise jurisdiction over Mr. Pace.

Mr. Pace's argument that his actions in Utah were performed as a corporate officer and do not subject him personally to jurisdiction here fails.  Mr. Pace cannot rely on Ten Mile Industrial Park v. Western Plains Service Corp., which states that "[j]urisdiction over the representatives of a corporation may not be predicated on jurisdiction over the corporation itself, and jurisdiction over the individual officers and directors must be based on their individual contacts with the forum state."  810 F.2d 1518, 1527 (10th Cir. 1987).  In Ten Mile, the nonresident defendants' only contact with the forum state was their ownership in the company.  Here, Mr. Pace has engaged in substantial activities in Utah in support of AYCT.  As one of only two shareholders of the company, these contacts served his personal as well as his business interests.  See Rusakiewicz v. Lowe, 556 F.3d 1095 (10th Cir. 2009) (noting that the contacts by defendants in Utah, despite having been in the judicial district because they were corporate officers, were contacts by the defendants themselves).  And, as noted above, Mr. Pace signed the personal guaranty in his personal, not his corporate, capacity.

Finally, Mr. Pace fully participated in the arbitration of AYCT's claims against Cricket and was likely involved in AYCT's decision to litigate those claims in Utah. (See Def.'s Mem. Supp. Am. Mot. Dismiss, at 4, 15, Dkt. No. 35.) And Mr. Pace acknowledges that AYCT chose to sue Cricket in Utah state court before later agreeing to arbitrate the matter. (See id. at 15.) "It is well established that the act of filing a lawsuit in a particular state is sufficient to establish jurisdiction over the plaintiff in the courts of that state in a subsequent action for abuse of process or similar torts." Rusakiewicz, 556 F.3d at 1101. See also Neuralstem, Inc. v. StemCells, Inc., 573 F. Supp. 2d 888, 897-98 (D. Md. 2008) (collecting cases in which a party "essentially consents" to jurisdiction in the forum state through the "act of filing a previous suit where the second suit arises from the 'same transaction'"). And other courts "have found the act of authorizing and directing a lawsuit to be enough to establish jurisdiction over officers of a corporation." Rusakiewicz, 556 F.3d at 1101. Mr. Pace acted as an integral decision-maker during AYCT's arbitration with Cricket. And while the extent to which Mr. Pace "authoriz[ed] and direct[ed]" the filing of the initial lawsuit and subsequent arbitration is unclear, his participation in these actions supports the court's finding that Mr. Pace has created sufficient "minimum contacts" with Utah to be subject to the forum's jurisdiction.

Having determined that Mr. Pace meets the minimum contacts test, the court must also ascertain that the exercise of personal jurisdiction over Mr. Pace does not offend "traditional notions of fair play and substantial justice." OMI Holdings, Inc. v. Royal Ins. Co. Of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998). In making such an inquiry, the court looks at the following factors:

(1) the burden on the defendant, (2) the forum state's interests in resolving the

>dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states [or foreign nations] in furthering fundamental social policies.

Id. at 1095; Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 113 (1987). The court finds that the burden on Mr. Pace is light, especially given that Mr. Pace has already participated in litigation and arbitration regarding this matter in this state. The other factors are either neutral or argue for exercising jurisdiction over Mr. Pace.

As a result, the court finds that jurisdiction over Mr. Pace is proper in this matter.

Improper Venue

Mr. Pace claims that venue is inappropriate in Utah because he is not a resident of Utah and because no substantial events material to the suit arose in Utah. Mr. Pace believes that because he signed the personal guaranty while he was in Ohio, and was not a resident of Utah at the time of the alleged breach, no substantial events occurred in Utah. His belief is misguided.

Under 28 U.S.C. § 1391(a)(2), venue is appropriate in a judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." Substantial events material to Cricket's claim against Mr. Pace certainly occurred in Utah. AYCT is a corporate resident of Utah. AYCT negotiated the Premier Dealer Agreement and the personal guaranty in Utah. AYCT's assets are located in Utah. AYCT breached the Premier Dealer Agreement, which triggered Mr. Pace's liability, in Utah. AYCT filed suit against Cricket in Utah state court and agreed to arbitrate its claims in Salt Lake County, Utah. (See Pl.'s Mem. Opp. Am. Mot. Dismiss, at 21-23, Dkt. No. 39.) Utah is not only an appropriate choice for venue, but it is an obvious one. See

also BP Lubricants, USA, Inc. v. Pro-Formance Lube Ctr., Inc., 2011 U.S. Dist. LEXIS 53891, at *5 (E.D. Wash. May 10, 2011) (unpublished) (venue is proper in the district where the judgment debt is located); Stone v. Patchett, 2009 U.S. Dist. LEXIS 35049, at *56-57 (S.D.N.Y. Apr. 23, 2009) (unpublished) (venue is proper in state where contract was negotiated and entered into, where the court had ordered arbitration of the contract, and where plaintiffs were seeking to enforce the arbitration judgment).

### Transfer of Venue

In the alternative, Mr. Pace argues that the court should transfer venue of the case to the District of Kansas (where he currently resides). There is no reason for the court to do so. Venue is appropriate in Utah, and there is no reason to prolong a decision in the case by transferring it elsewhere.

**Motion to Continue Discovery**

Mr. Pace contends that he requires further discovery into four issues. The court does not see a need for additional discovery in any of these matters.

First, Mr. Pace argues that he does not have a legible copy of the personal guaranty. While the copy that Cricket attached to its complaint and motion for summary judgment was blurry, Cricket submitted a more legible version in response to Mr. Pace's motion (see Sorensen Decl. Ex. 18, Dkt. No. 44.) Cricket claims that this copy was produced to Mr. Pace during the AAA arbitration. (Id. at Ex. 20.) Moreover, Mr. Pace does not dispute that he signed a personal guaranty. He also does not point out specific terms with which he takes issue. Finally, he has signed other personal guaranties in the past with the same terms. (Id. at Exs. 3, 4.) As a result, the court does not see a need for further discovery of the terms of the agreement.

Second, Mr. Pace claims that he needs discovery into the enforceability of the underlying Premier Dealer Agreement. But this issue was fully litigated in the arbitration. The Arbitrator found that AYCT breached the Premier Dealer Agreement and that AYCT's principal, Mr. William H. Curtis, breached a personal guaranty that was identical to the personal guaranty that Mr. Pace signed. (Sorensen Decl. Ex. 2, at 3, Dkt. No. 44-2.) In addition, the court is not concerned with the enforceability of the underlying agreement. The judgment against AYCT signed by Judge Benson is sufficient evidence to find that AYCT has an obligation to Cricket.

Third, Mr. Pace claims that Cricket breached the covenant of good faith and fair dealing and induced Mr. Pace to sign the personal guaranty through fraud. Specifically, Mr. Pace alleges that at the time of the signing, Cricket had a plan to "destroy AYCT's business as a Cricket dealer . . . ." (Def.'s Mem. Supp. Mot. Continue, at 5, Dkt. No. 37.) But this issue was also litigated in the arbitration, at least concerning the personal guaranty signed by Mr. Curtis. The Arbitrator held, "In sum I find that Cricket has met its burden on the two claims for breach of contract and that AYCT has not met its burden on its claims for breach of contract, breach of the implied duty of good faith and fair dealing, fraud or intentional misrepresentation." (Sorensen Decl. Ex. 2, at 10, Dkt. No. 44-2.) And if Mr. Curtis was not induced to sign a personal guaranty through fraud, there is no reason for the court to suspect any differently with respect to the identical personal guaranty signed by Mr. Pace. The court finds that additional discovery in this matter would not be helpful.

Finally, Mr. Pace requests discovery into whether Cricket released Dean Bigelow, one of the co-guarantors, from his personal guaranty in order to induce Mr. Bigelow to open his own Cricket stores. But Cricket claims that Mr. Bigelow has not been released. (See Laughlin Decl.

at ¶ 4, Dkt. No. 46.) To the extent that this issue is disputed, Mr. Pace cites no authority for the proposition that under Kansas or Utah law, "the release of one co-guarantor acts to effectively release all other co-guarantors to the extent of the value of the consideration transferred in return for the release." (Def.'s Mem. Supp. Mot. Continue, at 6, Dkt. No. 37.) At any rate, Cricket is not seeking double recovery from the co-guarantors, but simply one recovery from any co-guarantor, all of whom Cricket alleges are equally liable under their agreements. Mr. Pace does not dispute Cricket's contention that it has not yet been paid any portion of the arbitration judgment. As a result, Mr. Bigelow's status as a co-guarantor is irrelevant to the case before the court, and further discovery in this issue would not be helpful.

The court finds that Mr. Pace does not need additional discovery in this matter.

**Motion to Strike**

Mr. Pace has filed a motion to strike Cricket's reply memorandum in support of its motion for summary judgment in which he claims that Cricket "advances new arguments and evidence in support of its motion." (Def.'s Mem. Supp. Mot. Strike, at 2, Dkt. No. 51.) The court disagrees with Mr. Pace. Cricket's reply memorandum responded directly to the defenses made for the first time by Mr. Pace in opposition to Cricket's motion for summary judgment. Cricket is entitled to respond to Mr. Pace's defenses in its reply memorandum. See Local Rule DUCivR 7-1(b)(3) ("Reply memoranda in support of any motion . . . must be limited to rebuttal of matters raised in the memorandum opposing the motion."). The court is satisfied that Cricket's reply was focused on rebutting the matters that were raised in Mr. Pace's opposition memorandum.

**Motion for Summary Judgment**

The court grants summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court "view[s] the evidence and make[s] all reasonable inferences in the light most favorable to the nonmoving party." N. Natural Gas Co. v. Nash Oil & Gas, Inc., 526 F.3d 626, 629 (10th Cir. 2008). Even when viewed in the most favorable light, none of the issues raised by Mr. Pace in his opposition to Plaintiffs' motion create a genuine dispute of material fact. As noted above, this case concerns two issues: whether there is a valid judgment against AYCT, and whether Mr. Pace is liable under the personal guaranty to Cricket for AYCT's obligations. Judge Benson's judgement entered against AYCT on October 3, 2011 resolves the first issue. As to the second question, the court finds that the evidence presented by Cricket clearly demonstrates that Mr. Pace signed a personal guaranty on July 1, 2008, under which he is liable to Cricket for "all amounts payable pursuant to the [Premier Dealer] Agreement."

Although belatedly, Cricket has produced a copy of the personal guaranty that is sufficiently legible to make out the date, the terms of the guaranty, and Mr. Pace's signature. (Sorensen Decl. Ex. 6, Dkt. No. 44-6.) And the extensive references to this document and its formation are sufficient to remove any doubts the court could have as to the document's terms and its effect. (See, e.g., Sorensen Decl. Ex. 10, Dkt. No. 44-10 (arbitration proceedings in which Mr. Pace's attorney stated that Cricket has known about the personal guaranty signed by Mr. Pace since June 18, 2008); Pl.'s Mem. Opp. Mot. Dismiss Ex. E, Dkt. No. 15-6 (Mr. Curtis's email to Mr. Pace requesting Mr. Pace to sign a personal guaranty as part of "the new Cricket agreement" and Mr. Pace's response to "send [the documents] over"); Pl.'s Mem. Supp. Mot.

Summ. J. Ex. A, at 34-35, Dkt. No. 14-1 (legible copies of the personal guaranties signed by Mr. Curtis and Mr. Bigelow that appear to contain identical terms to those in the personal guaranty signed by Mr. Pace); Sorensen Decl. Exs. 3, 4, Dkt. No. 44-3 (legible copies of two personal guaranties signed by Mr. Pace in 2003 and 2004 in connection with an agreement between Cricket and another of Mr. Pace's companies, Revive Wireless, which appear to contain identical terms to those in the personal guaranty signed by Mr. Pace for AYCT).)  Significantly, Mr. Pace has not disputed that he signed a personal guaranty with Cricket.  At most, he equivocates by stating that he signed "what he believed to be a personal guarantee regarding some obligations of AYCT."  (Def.'s Reply Br., at 2, Dkt. No. 52.)  Faced with the mountain of evidence provided by Cricket, Mr. Pace's alleged ignorance of the terms of the personal guaranty does not create a genuine issue of material fact in this matter.

The court has already considered most of Mr. Pace's arguments in opposition to Cricket's summary judgment motion, as many of his points repeat the claims that he sets forth in his motion to continue.  These arguments include: the legibility of the personal guaranty document, the enforceability of the underlying Premier Dealer Agreement, and the alleged fraud that Cricket committed when it induced AYCT to sign the Premier Dealer Agreement and Mr. Pace to sign the personal guaranty.  Only the last argument was not fully litigated during the arbitration.  But the arbitrator found that an identical personal guaranty signed by Mr. Curtis was enforceable, and Mr. Pace has not introduced any evidence that his agreement should be treated differently than Mr. Curtis's.

Instead, Mr. Pace claims that the documents cited by Cricket in support of its motion for summary judgment are inadmissible because they "lack foundation" and are not "properly

authenticated." (See, e.g., Def's Mem. Opp. Mot. Summ. J., at 4-5, Dkt. No. 38.) But any concerns about the authenticity of the documents provided by Cricket in its original memorandum in support of its motion have been cured through Cricket's submission of Amy Sorensen's declaration, which attests to the authenticity of the documents. (Sorensen Decl., Dkt. No. 44.) The court finds that Cricket has provided sufficient evidence concerning the fundamental issues in the case. Mr. Pace signed a personal guaranty which, by his own admission, places "any financial liability brought on by the breach of the agreement between the parties, the acts or omissions [of AYCT and Cricket], at the feet of the guarantor." (Def.'s Mot. Dismiss, at 3, Dkt. No. 6.) There is a valid judgement against AYCT, a judgment that resulted from AYCT's breach of the Premier Dealer Agreement. As a result, Mr. Pace is liable for the amount of the judgment, and Cricket is entitled to summary judgment.

## CONCLUSION

The court GRANTS Plaintiffs' motion for summary judgment (Dkt. No. 13) and DENIES Defendant's motions to dismiss (Dkt. Nos. 5, 34) and motion to strike (Dkt. No. 50). The court DENIES AS MOOT Defendant's motion to continue discovery (Dkt. No. 36). The court orders the clerk to close the case.

SO ORDERED this 2nd day of April, 2012.

BY THE COURT:

_____
TENA CAMPBELL
United States District Judge